## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BETTY DAVIS,                                              CASE NO:

        Plaintiff,

v.                                                       **COMPLAINT**

                                                         **JURY TRIAL DEMANDED**

ABILITY RECOVERY SERVICES, LLC,

        Defendant.

_____ /

## COMPLAINT

Plaintiff, Betty Davis ("Betty"), by and through counsel, brings this action against Defendant, Ability Recovery Services, LLC ("ARS"), and states as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages brought by individual consumers based on Defendant's alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and the Florida Consumer Collection Practices Act ("FCCPA"), Chapter 559, Florida Statutes.

## PARTIES

2. Betty is a natural person who resided in St. Petersburg, Florida, at all times relevant to this action.

3.   ARS is a Pennsylvania limited liability company that maintained its principal place of business in Moosic, Pennsylvania, at all times relevant to this action.

## JURISDICTION AND VENUE

4.   Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

5.   Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over Betty's claims under the Florida Consumer Collection Practices Act, Fla. Stat. ("FCCPA"), § 559.55, et seq., because those claims share a common nucleus of operative facts with Plaintiff's claims under the FDCPA.  S*ee LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010) ("[FCCPA's] remedies are 'cumulative to other sanctions and enforcement provisions' for any violation by an out-of-state consumer debt collector.").

6.   Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

7.   Before ARS began contacting Betty, it and Betty had no prior business relationship and Betty had never provided express consent to ARS to be contacted on her cellular telephone.

8.   ARS regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

9.   The principal source of ARS's revenue is debt collection.

10.   ARS is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

11.   As described, *infra*, ARS contacted Betty to collect a debt that was incurred primarily for personal, family, or household purposes.

12.   This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

13.   Betty is a "consumer" as defined by 15 U.S.C. § 1692a(3).

14.   Within the past twelve months, specifically around early November 2016, ARS began calling Betty on Betty's cellular phone ending in -1903 in connection with the collection of a debt.

15.   When Betty would answer the calls, there would be a pre-recorded message before Betty could speak with a live representative.

16.   During the initial conversation, Betty communicated her desire that ARS cease calling her.

17.   Despite this communication, ARS continued to call Betty on Betty's cellular phone in connection with the collection of a debt.

18.   On more than one occasion, Betty communicated her desire that ARS cease calling her.

19.   On more than one occasion, ARS told Betty she owed a debt and ARS had a right to call Betty.

20.   On at least one occasion, ARS telephoned Betty on Betty's cellular phone after 9:00 P.M. in Betty's time zone.

21.   Around early January 2017, Betty notified ARS she retained legal counsel and provided her attorney's contact information.

22.   Despite this notice, ARS sent a letter to Betty on February 12, 2017.

23. ARS's collection efforts, including but not limited to its telephone calls, caused Betty emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

24. ARS's collection efforts also intruded upon Betty's privacy.

25. In addition, each time ARS placed a telephone call to Betty, ARS occupied Betty's telephone number such that Betty was unable to receive other phone calls at that telephone number while ARS was calling her.

26. ARS's telephone calls also forced Betty to lose time by having to tend to ARS's unwanted calls.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

27. Betty re-alleges and incorporates by reference Paragraphs 14 through 26 above as if fully set forth herein.

28. ARS violated 15 U.S.C. § 1692c(a)(1) by calling Betty at a time or place known to be inconvenient for Betty.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

29. Betty re-alleges and incorporates by reference Paragraphs 14 through 26 above as if fully set forth herein.

30. ARS violated 15 U.S.C. § 1692c(a)(2) by communicating with Betty notwithstanding knowledge that Betty was represented by an attorney with respect to the debt.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

31.   Betty re-alleges and incorporates by reference Paragraphs 14 through 26 above as if fully set forth herein.

32.   In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector.  *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

33.   "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

34.   The likely effect of ARS's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Betty.

35.   ARS violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Betty in connection with the collection of the debt.

## COUNT FOUR

### Violation of the Fair Debt Collection Practices Act

36.   Betty re-alleges and incorporates by reference Paragraphs 14 through 26 above as if

       fully set forth herein.

37.   ARS violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the

       debt.

## COUNT FIVE

### Violation of the Telephone Consumer Protection Act

38.   Betty re-alleges and incorporates by reference Paragraphs 14 through 26 above as if

       fully set forth herein.

39.   Senator Fritz Hollings, the original sponsor of the TCPA, stated:

> Computerized calls are the scourge of modern civilization. They wake us up in the
> morning; they interrupt our dinner at night; they force the sick and elderly out of
> bed; they hound us until we want to rip the telephone right out of the wall.

       137 Cong. Rec. 30,821 (1991).

40.   The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment

       which has the capacity…(A) to store or produce telephone numbers to be called, using

       a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. §

       227(a)(1).

41.   "[A] predictive dialer is equipment that dials numbers and, when certain computer

       software is attached, also assists telemarketers in predicting when a sales agent will be

       available to take calls. The hardware, when paired with certain software, has the

       capacity to store or produce numbers and dial those numbers at random, in sequential

order, or from a database of numbers." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

42.   A telephone dialing system with predictive dialer functionality is an ATDS within the meaning of the TCPA. *Smith v. MarkOne Fin., LLC*, 2015 WL 419005, *2-3 (M.D. Fla. Feb. 2, 2015); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

43.   ARS used a telephone dialing system with predictive dialer functionality to place calls to Betty on her cellular telephone.

44.   The TCPA provides, in part:

(b)     RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—

(1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any

> automatic telephone dialing system or an artificial or prerecorded voice—
>
> * * *
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

47 U.S.C. §§ 227(b)(1)(A)(iii).

45. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961,7999-8000, ¶ 72-73 (2015).

46. Betty was the "called party" in each telephone call ARS placed to Betty's cellular telephone.

47. The "called party" may revoke any prior consent to be called on his or her cellular phone in any reasonable manner. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961,7993, ¶ 55 (2015); *Brown v. Credit Mgmt., LP*, 131 F. Supp. 3d 1332, 1345 (N.D. Ga. 2015) ("The unwillingness [to receive calls] 'may be manifested to the actor by any words or conduct inconsistent with the continued consent.'").

48. ARS violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an ATDS and/or an artificial or prerecorded voice to call Betty on her cellular telephone without Betty's prior express consent or after such consent had been revoked.

49.    In addition, The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

50.    The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...."  47 U.S.C. § 312(f).

51.    In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute.  *See Roylance v. ALG Real Est. Servs., Inc.* 2015 WL 1522244, *9 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, *7 (N.D. Ill. Mar. 19, 2013); *Stewart v. Regent Asset Mgmt. Solutions, Inc.*, 2011 WL 1766018, *7 (N.D. Ga. May 4, 2011).

52.    Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA.  *See Bridgeview*, 2013 WL 1154206, at *7; see also *Roylance*, 2015 WL 1522244, at *9 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

53.    ARS voluntarily placed telephone calls to Betty's cellular telephone number using an ATDS and/or an artificial or prerecorded voice.

54.    ARS's violations of 47 U.S.C. § 227(b)(1)(A) were willfully and knowingly made.

## COUNT SIX

### Violations of the Florida Consumer Collection Practices Act

55. Betty re-alleges and incorporates by reference Paragraphs 14 through 26 above as if fully set forth herein.

56. At all times relevant to this action, ARS is subject to and must abide by Florida law, including the FCCPA, Fla. Stat. § 559.72.

57. ARS is a "debt collector" as that term is defined in the FCCPA, Fla. Stat. § 559.55(7).

58. Betty is a "consumer" as defined by the FCCPA and is a person whom the act was intended to protect, FCCPA, Fla. Stat. § 559.55(2).

59. ARS attempted to collect a "debt" within the meaning of FCCPA, Fla. Stat. § 559.55(1).

60. ARS willingly and knowingly violated Fla. Stat. § 559.72(7) by communicating with Plaintiff with such frequency as can reasonably be expected to harass Plaintiff, or engaging in other conduct, which can reasonably be expected to abuse or harass Plaintiff.

61. ARS willingly and knowingly violated Fla. Stat. § 559.72(17) by communicating with Plaintiff before 8:00 a.m. or after 9:00 p.m. in Plaintiff's time zone.

62. ARS willingly and knowingly violated Fla. Stat. § 559.72(18) by communicating with Plaintiff after ARS knew that Plaintiff was represented by an attorney and had knowledge of, or could readily ascertain, such attorney's name and address.

### JURY DEMAND

63. Betty demands a trial by jury.

**PRAYER FOR RELIEF**

64.   Betty prays for the following relief:

a.   Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

b.   An order enjoining Defendant from placing further telephone calls to Plaintiff's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

c.   Judgment against Defendant for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call Defendant made in violation of the TCPA.

d.   Judgment against Defendant for actual damages, statutory damages, costs and reasonable attorney's fees, plus punitive damages pursuant to Fla. Stat. § 559.77.

e.   For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date: October 17, 2017                    By:     /s/ H. Karen Gatto
                                          One of Plaintiff's Attorneys

                                          *Of Counsel*
                                          H. Karen Gatto, Esq.
                                          Florida Bar No. 0190527
                                          HYSLIP & TAYLOR, LLC, LPA
                                          8270 Woodland Center Blvd.
                                          Tampa, FL 33614
                                          Phone: 800-675-5507
                                          Email: Kgatto@gattolaw.com